**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**SCOTT R. ROSENLUND,**

    **Plaintiff,**

v.                                                       Case No. 8:08-cv-1457-T-TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

## **O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for a continuing period of Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

### I.

Plaintiff was fifty years of age at the time of his administrative hearing in March 2007. Plaintiff has a college education and received an associate's degree. His past relevant work was as a self-employed painter/pressure washer, sales manager and service counter worker for an auto air conditioning manufacturer, and life insurance agent. Plaintiff originally applied for disability benefits in October 2002, alleging disability as of March 8, 2002, by reason of cirrhosis, hepatitis C, pulmonary hypertension, confusion, anxiety, depression, hallucination, and anger. In a determination dated November 21, 2002, Plaintiff was found disabled as of March 8, 2002, on the basis that his cirrhosis met the requirements

of Listing 5.05B. On June 29, 2005, it was determined on a continuing disability review that Plaintiff was no longer disabled as of June 1, 2005. (R 43). Plaintiff filed a request for reconsideration. (R. 48). A hearing before a disability hearing officer on the request for reconsideration was conducted in December 2005. The request for reconsideration was denied on January 5, 2006. (R. 56-66).

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ") on March 19, 2007.[1] The Plaintiff was represented at the hearing by counsel and testified in his own behalf. In essence, Plaintiff testified that he is unable to work due to continuing liver problems, swollen legs/feet, fatigue, and a bad left arm. Regarding his liver, Plaintiff indicated that he still is on a liver transplant list. He explained that, when he first was sick, he was higher on the list because his health was not good and he was still drinking. Since then, Plaintiff said that, while his condition has not improved, it has stabilized. He follows his doctors' advice, and he is approaching fives years' of sobriety. He does not receive treatment for his hepatitis C. Plaintiff was hospitalized in April with encephalopathy.[2]

---

[1] An initial hearing was conducted on February 13, 2007. After a brief inquiry by the ALJ, Plaintiff indicated he wished to obtain counsel and the hearing was rescheduled. (R. 644-46).

[2] "Encephalopathy is a term for any diffuse disease of the brain that alters brain function or structure. Encephalopathy may be caused by an infectious agent (bacteria, virus, or prion), metabolic or mitochondrial dysfunction, brain tumor or increased pressure in the skull, prolonged exposure to toxic elements (including solvents, drugs, radiation, paints, industrial chemicals, and certain metals), chronic progressive trauma, poor nutrition, or lack of oxygen or blood flow to the brain. The hallmark of encephalopathy is an altered mental state. Depending on the type and severity of encephalopathy, common neurological symptoms are progressive loss of memory and cognitive ability, subtle personality changes,

Since his initial disabling liver impairment, Plaintiff has developed diabetes, gained weight, and injured his left arm. He has to watch his diet and sodium intake. During the last year, Plaintiff gained about 60 pounds; his feet got big, and his legs got swollen. He eventually had to go to the hospital for it and have fluid drained. Plaintiff testified that he has to keep his feet elevated so that he does not retain water in his lower legs. When that happens, it is painful and he has to take medication. He takes Lasix and Dyrenium to keep the water off his legs. He also takes a potassium supplement because the water leaves his body so fast that he gets cramps. His limited diet causes fatigue. He indicated that he cannot stay awake. In addition to his day-time fatigue, Plaintiff indicated that he has difficulty sleeping at night. By his account, he sleeps about three or four hours a night. He has to be careful driving after he eats because he tends to get tired from the sugar release. As for his arm, Plaintiff stated that he broke his left elbow in nine places. He has had three surgeries on his arm. The last surgery involved putting staples, a plate, and pins in his arm. Plaintiff indicated that he still suffers residual pain in his arm.

Plaintiff indicated that he sees his primary doctor about once a month and his specialist as needed. By his testimony, none of his doctors have released him to work full-time. Plaintiff drives but must be careful because he has difficulty staying awake. He tries to maintain a good attitude, but it is hard. He cannot do many of the things he used to enjoy.

---

inability to concentrate, lethargy, and progressive loss of consciousness. Other neurological symptoms may include myoclonus (involuntary twitching of a muscle or group of muscles), nystagmus (rapid, involuntary eye movement), tremor, muscle atrophy and weakness, dementia, seizures, and loss of ability to swallow or speak."
www.ninds.nih.gov/disorders/encephalopathy/encephalopathy.htm. (last visited Sept. 14, 2009).

Regarding his work, Plaintiff testified that he has had his own painting business since about 2002 or 2003. His office is in his home, and he works primarily by checking out potential job sites, preparing written estimates, and bidding on contracts; he pays others to do the actual painting. By his testimony, he works about twenty hours a week and much of that time is on the phone. Plaintiff schedules his work when he feels good. He testified that his business is secondary to his health but that he has to work because his disability income is not enough to pay all of his bills. At the time of the hearing, Plaintiff had two employees, both painters. The most employees Plaintiff has had is five. According to Plaintiff, the most money he has made with his business over the last couple of years is six to ten thousand dollars. The last year, 2006, was a loss because of his broken arm and related surgery. *See* Plaintiff's testimony (R. 651-66).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of August 30, 2007, the ALJ determined that while Plaintiff has severe impairments related to chronic liver disease, hepatitis C, venous insufficiency, sleep apnea, obesity, a history of alcohol abuse in remission, and dysthymia, his medical condition had improved and by June 1, 2005, he had the residual functional capacity to perform the full range of light exertional work. Upon this finding, the ALJ concluded that Plaintiff could perform his past work as a paint contractor. Upon this conclusion, the Plaintiff's disability was determined to have ended as of June 1, 2005. (R 17-23). The Appeals Council considered additional evidence and denied Plaintiff's request for review.

II.

In continuing disability cases, the Commissioner applies a multi-step evaluation process set forth in 20 C.F.R. §§ 404.1594 and 416.994. *See also* 42 U.S.C. § 423(f). The first part of the evaluative process is whether medical improvement has been demonstrated. A claimant's disability benefits may be terminated if there has been any medical improvement, if the improvement is related to the ability to work, and if the claimant is currently able to engage in substantial gainful activity. 20 C.F.R. § 404.1594(a). "Medical improvement" is "any decrease in the medical severity of . . . impairment(s) [that] was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.* And, a medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities . . ." *Id.* at § 404.1594(b)(3). If, despite the medical improvement, a claimant still suffers a severe impairment, the ALJ must next decide whether the claimant can do his past work or other jobs available in the economy. *Id.* at § 404.1594(f)(7); *see also Demenech v. Sec'y of Health & Human Servs.*, 913 F.2d 882, 883 n.2 (11th Cir. 1990). Here, Plaintiff maintains that he cannot.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

5

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises four claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) Whether the ALJ committed reversible error by not finding fully credible the medical record of evidence from treating physician, William C. Brown, Jr., M.D. and the restrictions imposed upon the claimant's residual functional capacity;

(2) The ALJ committed reversible error by failing to fully and fairly evaluate the medical record of evidence from treating gastroenterologist, L. Michael Weiss, M.D.;

(3) The ALJ committed reversible error by failing to adequately evaluate the Plaintiff's daily activities in finding that the Plaintiff was able to perform a full range of light work; and

(4) Whether the ALJ committed reversible error by failing to adequately consider additional evidence submitted and made part of the record from the Appeals Council contained in Exhibits AC-1 through AC-3.

By his first two claims, Plaintiff argues that the ALJ erred when considering the opinions of his treating physicians, William C. Brown, Jr., M.D., and L. Michael Weiss, M.D. As for Dr. Brown, Plaintiff urges that the ALJ erred by failing to (1) discuss and credit the doctor's August 2005 opinion that Plaintiff could not work more than ten to fifteen hours a week, (2) accurately recount the doctor's February 2007 statements regarding Plaintiff's diet-related fatigue and/or exhaustion and inability to stand for any length of time without pain, discomfort and swelling in his lower extremities, (3) accept the doctor's statement that Plaintiff's encephalopathy had worsened, and (4) provide explicit and adequate reasons for

7

not finding the doctor's statements fully credible. According to Plaintiff, Dr. Brown's opinions and observations are inconsistent with the ALJ's conclusions that he can perform light work or any work on a sustained, gainful basis and the ALJ's reasons for discounting his opinions are not supported by the record. (Doc. 14 at 5-9). As for Dr. Weiss, Plaintiff urges that while the ALJ relied on his opinion, the ALJ did not accurately summarize his reports and failed to discuss his notation that Plaintiff gets peripheral edema if he stands for any length of time. *Id.* at 9-10.

In response, the Commissioner urges that the ALJ correctly discounted Dr. Brown's opinions on grounds that they were unsupported by his own medical records and inconsistent with the statements and records of Dr. Weiss. In particular, the Commissioner contends that neither the August 2005 statement nor the February 2007 statement were relevant for the period through June 1, 2005, the date on which the ALJ found Plaintiff's disability had ceased. Likewise, the Commissioner contends that even if the ALJ misconstrued Dr. Weiss's report of April 2007, statements during that time are irrelevant to Plaintiff's status as of June 1, 2005. Without conceding error, the Commissioner urges that any alleged error with regards to Dr. Weiss was harmless. (Doc. 17 at 6-10).

As an initial matter, the pertinent time period for review in cessation cases must be addressed. Under the applicable standard, benefits may be terminated when a recipient's medical condition has improved, such improvement is related to his ability to work, and "the individual is *now* able to engage in substantial gainful activity; . . ." 42 U.S.C. § 423(f) (emphasis added). In deciding this, the Social Security Administration ("SSA") must consider "all the evidence available in the individual's case file, including new evidence

concerning the individual's prior or *current* condition which is presented by the individual or secured by the Commissioner. . ." *Id.* (emphasis added). The proper construction of this provision and the regulations thereunder is critical to the resolution of this case. The Sixth Circuit was the first to address the matter and held that, upon reconsideration of the termination of disability insurance benefits, the dispositive question is the claimant's condition on the date of the hearing, not the date of the termination of benefits. *Difford v. Sec'y of Health & Human Servs.*, 910 F.2d 1316, 1319-20 (6th Cir. 1990). As the SSA interprets this provision, the period under review relates to the claimant's condition at the initial determination of cessation, not at the time of the ALJ's hearing. In response to *Difford*, the SSA issued an "Acquiescence Ruling" to explain that the agency would comply with the decision only in the Sixth Circuit because it conflicted with the agency's own interpretation of the Act. *See* Social Security Acquiescence Ruling 92-2(6), 57 Fed. Reg. 9262 (Mar. 17, 1992). The SSA reiterated that its existing policy was to review cessation cases on the basis of the claimant's condition only as of the cessation date, not the condition at the time of the hearing before the ALJ. *Id.* at 9264. Subsequent thereto, the Fourth and Seventh Circuits concluded that the SSA's interpretation is entitled to deference and each has held that the operative date is the cessation date, not the date of the hearing. *See Lever v. Barnhart*, No. 03-1154, 2003 WL 22301081 (4th Cir. 2003) (unpublished); *Johnson v. Apfel*, 191 F.3d 770, 774-75 (7th Cir. 1999). The Eleventh Circuit has not yet addressed the matter.

I find the rationale set forth by the Seventh Circuit persuasive. The SSA's interpretation of "current" as such is used in 42 U.S.C. § 423(f) is entitled to deference, and I agree that the operative date for deciding whether the claimant's disability persists is the date

9

of cessation and not the date of the administrative hearing or the ALJ's decision.[3] On this conclusion, the critical evidence from Plaintiff's treating doctors is that which relates to his condition in June 2005.

As such, Plaintiff's complaints of the ALJ's handling of the reports from Dr. Brown from February 2007 and Dr. Weiss from 2007 and 2008, are wholly unpersuasive. These reports simply do not speak to the ALJ's findings that, as of June 1, 2005, Plaintiff's condition no longer satisfied any listing and that the medical improvement demonstrated by that finding related to his ability to work. Nor does Plaintiff demonstrate that the later medical reports of these two treating doctors speak to his residual functional capacity in June 2005. What they do reflect is that Plaintiff continued to have serious health problems, and, on more than one occasion in 2006 and 2007, was a very sick man. But, absent a showing that the reports from Drs. Brown and Weiss relate back to the pertinent period, these claims are appropriately denied.

To the extent it can be urged that Dr. Brown's August 2005 treatment note is relevant to the period under consideration given the close proximity in time to the cessation date, I find that any error with respect to it was harmless. By this record, Dr. Brown noted that Plaintiff "can't work more than 10-15 hours a week." (R. 607). As indicated by Plaintiff, the ALJ does not mention this particular opinion. Under controlling authority, the ALJ's failure to address the opinion or provide good cause for rejecting it constitutes error. *See*

---

[3]Under this construction, if the evidence at such a hearing confirms that the claimant was no longer disabled on the date of cessation but suggests that the claimant has become disabled again, the ALJ shall advise the claimant that his or her remedy is the filing of a new application for benefits.

10

*Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Nonetheless, on this record I am unable to find that the error was harmful. As indicated by the ALJ with regard to Dr. Brown's later opinion, his treatment notes from the pertinent period, including the one that contains the 10-15 hour week work restriction, fail to note any functional limitations or testing or support for restricting Plaintiff in the manner in which he did. Rather, the doctor's records from 2005 reveal that Plaintiff did not have edema, his motor strength was 5/5 bilaterally, his gait was normal, and his edema/venous insufficiency was stable on medication. (R. 321-23, 607). Plaintiff's own testimony, namely that he worked about 20 hours a week, also undercuts Dr. Brown's restriction. Furthermore, none of the other medical records from 2004 and 2005 revealed or suggested physical restrictions.[4] Thus, an error in this regard is harmless.

By his third claim, Plaintiff argues that the ALJ erred in relying on his daily activities in finding that he could perform a full range of light exertional work. In support, Plaintiff cites to *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (providing that participation in daily activities of short duration such as housework do not disqualify a

---

[4]In April 2005, Dr. Weiss reported that Plaintiff was doing well, he had no edema, and his hepatitis C/cirrhosis was stable. (R. 25). In October 2005, Dr. Weiss again reported that Plaintiff was doing well and had no edema. (R. 612). Similarly, examinations conducted in March and September 2005 at LifeLink Healthcare Institute reported no edema and trace edema, no ascites, no ataxia, and essentially normal findings aside from liver levels being out of range. (R. 209, 517, 519). Dr. Sanford Plevin, Plaintiff's treating physician prior to Dr. Brown, reported essentially benign findings including no edema in February and May 2005. (R. 292-93). An abdominal ultrasound and CT scan in February 2005 revealed that the TIP shunt was in good position, and even though there was some turbulent flow, the shunt appeared patent. (R. 213-14). Thereafter, an angiography and CT of the abdomen in August 2005 revealed that the TIPS shunt was functioning well and in good position, and there were no focal hepatic lesions. (R 525-26).

11

claimant from disability). Plaintiff urges that his ability to work part-time and do laundry, some cleaning, and grocery shopping is not dispositive evidence of his ability to perform light work on a full-time basis and the ALJ should not have concluded as such. (Doc. 10-12).

The Commissioner counters that the ALJ properly considered Plaintiff's statements about his daily activities when assessing the credibility of his subjective complaints and functional capacity. He notes that the regulations specifically direct adjudicators to consider evidence of daily activities in doing so and cites to 20 C.F.R. § 404.1529 in support thereof. Additionally, the Commissioner notes that the ALJ did not rely solely on Plaintiff's daily activities; he also considered the medical record. Given the evidence considered by the ALJ, the Commissioner urges that no error occurred in the manner alleged by Plaintiff. (Doc. 17 at 10-13).

As the decision reflects, after concluding from his review of the medical record and Plaintiff's testimony about his current work that Plaintiff could perform light work activity, the ALJ attempted to bolster his conclusion by noting that Plaintiff drove, often shopped[5] with his wife, prepared meals, and did household chores such as laundry and vacuuming, activities which the ALJ believed compatible with the capacity for light work. (R. 23). For the reasons discussed below, I find no error in these additional findings. Even if such were error, in light of the other findings by the ALJ, any error was harmless.

---

[5]Plaintiff complains further that he never used the term "often" in connection with this activity. This appears correct. The administrative submission relied upon by the ALJ states, "He drives around during the day and he drives to the store and grocery shops with his wife most of the time." (R. 57, 118).

12

As a general principle, Plaintiff is correct that participation in such everyday activities of short duration does not disqualify him from disability. However, as the Commissioner urges, consideration of the same is entirely appropriate in deciding the extent of a claimant's limitations especially when the claim is based on subjectively reported symptoms. Here, the ALJ found that Plaintiff's medically determinable impairments present as of June 1, 2005, could have reasonably been expected to produce the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (R. 22). In so finding, the ALJ explained that the record evidence showed that Plaintiff's cirrhosis of the liver with hepatitis C, secondary to alcohol abuse that necessitated a TIPS shunt procedure (and which met Listing 5.05B), had improved. The ALJ's review of other medical evidence suggested the liver condition had stabilized. These findings were contrary to Plaintiff's subjective complaints that his symptoms, such as edema and resulting pain preventing him from standing or walking for periods of time, were of such a severity so as to preclude him from working more than part-time. In this regard, the ALJ also appropriately considered Plaintiff's reported daily activities. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Furthermore, it was permissible for the ALJ to consider the same when assessing Plaintiff's residual functional capacity. *See* 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, *7 (S.S.A.). In short, Plaintiff is not entitled to relief on this claim.

By his fourth claim, Plaintiff argues that a letter dated March 12, 2008, from Dr. Weiss (R. 625), which addressed the ALJ's concern that a treating physician had not commented on the possibility of a liver transplant, and a letter dated October 29, 2007, from

13

Charles J. McAllister, M.D., a consulting physician retained by Plaintiff to review his medical case and accompanying records, who opined that Plaintiff is disabled and has been since at least 2002, constitutes new, non-cumulative, and material evidence such that a remand is warranted. In support, Plaintiff cites to *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986), which sets forth the standard for consideration of new evidence presented to the district court. (Doc. 14 at 12-13).

In response, the Commissioner urges that the new evidence submitted by Plaintiff does not warrant a remand under sentence six of 42 U.S.C. § 405(g). Conversely, citing *Ingram v. Commissioner of Social Security*, 496 F.3d 1253 (11th Cir. 2007), the Commissioner states that when a claimant submits additional evidence to the Appeals Council, the district court is to review the record as a whole and consider whether that evidence renders the denial of benefits erroneous. In light of that standard, the Commissioner urges that the administrative record as a whole contains substantial evidence to support the denial of benefits.[6] (Doc. 17 at 14-17).

Section 405(g) of Title 42 authorizes a district court to remand an application for benefits to the Commissioner by two methods, commonly denominated as "sentence four remands" and "sentence six remands." Each sentence "remedies a separate problem." *See Ingram*, 496 F.3d at 1261. As that decision is pertinent to this claim, the Eleventh Circuit held that when a claimant properly presents new evidence to the Appeals Council, a

---

[6]While the Commissioner again references June 2005 as the operative date under consideration, he closes by urging that the administrative record as a whole supports the denial of benefits "through the date of the hearing decision." (Doc. 17 at 17). For the reasons set forth above, the court does not reach that assertion on this appeal.

14

reviewing court must consider whether that new evidence renders the denial of benefits erroneous under sentence four. *Id.* at 1262. In essence, the Appeals Council's denial of a request for review is part of the "final decision" of the Commissioner and is subject to judicial review. *Id.* at 1264. On the other hand, "[s]entence six of 42 U.S.C. section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time to the district court." *Ingram,* 496 F.3d at 1267. Thus, under sentence six of 42 U.S.C. § 405(g), a court may remand a case to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."[7] 42 U.S.C. § 405(g).

Here, a remand under sentence six is inappropriate because Plaintiff presented the evidence at issue to the Appeals Council. *See* (R. 8). Consequently, this court must consider whether that new evidence renders the denial of benefits erroneous under sentence four, not sentence six. *See Ingram*, 496 F.3d at 1262. Upon careful consideration, I find that it does not. In particular, neither Dr. Weiss (R. 625) nor Dr. McAllister (R. 636-37) spoke with

---

[7] By this standard, to demonstrate that a remand for consideration of new evidence is appropriate, the Plaintiff must demonstrate that: (1) there is new, non-cumulative evidence; (2) the evidence is material, i.e., relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Caulder*, 791 at 877.

particularity to the adjudicative period before the ALJ – through June 2005.[8] As such, I am unable to conclude that their records render the ALJ's cessation decision erroneous.

IV.

Plaintiff undoubtedly suffers severe impairments. However, for the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 18th day of September 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[8] This is not to say that such is not relevant or supportive of any new claim Plaintiff may have brought for disability benefits. Dr. Weiss has treated Plaintiff for many years and reports the progressive problems with encephalopathy, ascites, peripheral edema and diabetes. Dr. McAllister too reflects on the progressive debilitating nature of Plaintiff's diseases. These records, however, simply do not speak to the pertinent time period under review with sufficient particularity to require additional review of the redetermination decision.